IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Fail,<br><br>            Plaintiff,<br><br>vs.<br><br>Savannah River Nuclear Solutions, LLC,<br><br><br>            Defendant. | C/A No. 1:19-cv-2910-JFA-SVH<br><br><br><br>**ORDER** |

## I.     INTRODUCTION

In this employment discrimination case, Christopher Fail ("Plaintiff") sues his former employer, Savannah River Nuclear Solutions, LLC ("Defendant" or "SRNS"), asserting claims of race discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), as well as a claim for defamation. All pretrial proceedings in this case, including Defendant's motion for summary judgment (ECF No. 23) were referred to a Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.).

After reviewing the motion and all responsive briefs, the Magistrate Judge assigned to this action[1] prepared a thorough Report and Recommendation ("Report") and opines that this court should grant Defendant's motion. (ECF No. 30).

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final

1

The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this court incorporates those facts and standards without a recitation.

Plaintiff timely filed objections to the Report (ECF No. 35), to which Defendant filed a response. (ECF No. 38). Thus, this matter is ripe for review.

## II.   LEGAL STANDARD

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). However, a district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report of the Magistrate Judge, this court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

---

determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

**III.    DISCUSSION**

As stated above, the relevant facts and standards of law on this matter are incorporated from the Report. The Report set forth an extremely thorough recitation of the factual background necessary to adjudicate this motion and the Court will not attempt to summarize it again here. In response to the Report, Plaintiff has set forth 11 specific objections. The Court will address them seriatim.

<u>Objection Number 1</u>

Plaintiff's first objection asserts that the Report improperly concludes that the comparators offered by Plaintiff are not similarly situated. When attempting to prove employment discrimination, comparators do not have to be identical; rather, a plaintiff is only required to show that his comparators are "similar in all relevant respects[.]" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010); *see also Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) ("[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citation omitted)).

Plaintiff avers that he identified several coworkers, of black and Iranian ethnicity, that should be considered valid comparators because they engaged in conduct similar to Plaintiff's yet suffered no negative consequences. Plaintiff focuses on Wilson in particular as a non-white coworker in the same position as Plaintiff. However, as Defendant avers, Plaintiff's alleged comparators differ in a number of material respects. Specifically, "Plaintiff attempts to transform his co-workers into similarly situated comparators based

4

on statements they made after being called into meetings that were part of the investigation of Plaintiff's misconduct and, more importantly, statements offered to answer direct questions. None of the co-workers whom Plaintiff claims as comparators made any independent, unsolicited statement against employees, management, or subordinates." (ECF No. 38, p. 2).

As stated in the Report, Plaintiff was terminated for actions vastly different than those of his alleged comparators. Specifically, Plaintiff's voluntary unsubstantiated comments included informing multiple people multiple times that Ashley slashed his tire, for maintaining that Wilson was racist, and for stating that Wilson and Holloway improperly used and disposed of Triple-D and that Rose and Vince Bush falsified the applicable report paperwork. Wilson, the alleged comparator, however, merely stated that it was his "impression" that Plaintiff's problems with Taghavipour "may" be race-related. Moreover, this statement was made in response to an inquiry sparked by Plaintiff's allegations and was not an independent complaint.

Furthermore, Plaintiff's objection fails to account for the fact that Plaintiff was fired for several reasons other than complaints of racist comments. Those reasons include telling multiple employees that another co-worker slashed his tire and accusing his manager and a planner of falsifying documentation. Plaintiff also admitted to the Disciplinary Review Panel that he made unwarranted assumptions in making independent, unsolicited accusations against other employees. Wilson made no such admissions.

Thus, Wilson's singular comment regarding race in response to an official inquiry is not enough to set Plaintiff and Wilson on equal footing. Thus, Plaintiff's objection on this point must be overruled.

Objection Number 2

Plaintiff next avers that there is a question of fact as to whether the reasons proffered by Defendant were the actual reasons for Plaintiff's termination. Plaintiff contends that he has provided evidence that the proffered reasons were a mere pretext because they have been inconsistent over time, false, and based on mistakes of fact. In support of this assertion, Plaintiff points to three specific examples of alleged pretext.

Objection 2.1

First, Plaintiff avers that Defendant was aware of racist statements made by Wilson during its early 2018 investigation into Plaintiff's complaints of racism. Thus, Plaintiff's complaints of racism were not untrue and could not have been a valid reason for termination. Plaintiff states that Defendant investigators were aware of racial comments made by Wilson during the course of their investigations prior to Plaintiff's termination yet chose not to adequately question witnesses nor properly investigate Plaintiff's complaints. Thus, Defendant's investigation revealed evidence supporting that Plaintiff was honest in his concerns of inappropriate conversations surrounding race, and that Defendant declined to question witnesses about the substance of the racial conversations when witnesses began to substantiate Plaintiff's claims and indicated that conversations regarding race occurred.

Despite this assertion, a review of the Report indicates that the Defendant's investigations revealed evidence of conversations about politics and race yet showed no indication of inappropriate racist comments directed at Plaintiff. These comments include "only white people would do this" or "only white person's dumb enough to do this," and discussing white privilege. Plaintiff also avers political conversations took place. Merely discussing race or politics is not an indication of racist comments by Wilson sufficient to establish that Plaintiff's allegations of racism were a mere pretext for termination.

Plaintiff appears to agree to this point by arguing that "Defendant obtained evidence of racial conversation in the workplace but chose not to inquire as to the substance of any of the racial conversations." This contention indicates that Defendant was aware of conversations surrounding race that did occur, but Plaintiff believes investigators should have taken a deeper dive into his allegations of racism. Plaintiff's contentions regarding an insufficient investigation are addressed more thoroughly below. Here, Plaintiff has failed to show that the Report improperly characterized the evidence cited by Plaintiff or unfairly credited Defendant's version of events. Thus, this objection must be overruled.

Objection 2.2

Plaintiff next contends that he presented evidence that Defendant had knowledge that Plaintiff did not make false, unfounded, or highly irresponsible statements when he reported concerns surrounding the Activity Hazard Analysis ("AHA") report.

Plaintiff argues the investigation revealed that he had reason to believe his coworkers improperly used the chemical Triple D and made changes to the AHA. Despite Plaintiff's assertions, he plainly states in the objections that he responded "yes" to the

7

question, "you made an assumption it was falsely changed" during the disciplinary panel meeting. It is undisputed that assumption was not correct. As stated in the Report, it does not matter whether Plaintiff believed Triple D was improperly used at the job because he had no basis for later assuming his supervisors falsified documentation to cover up the alleged improper use. Thus, Plaintiff's objection on this point must be overruled.

Objection 2.3

Plaintiff next argues that he has presented evidence his termination was not based on his prior statements regarding tire slashing. Plaintiff avers that he has not made any statements that Ashley did in fact slash his tires and therefore this reason was used as a mere pretext for termination. Plaintiff claims he only made "passing statements to friends that he does not know one way or another" if Ashley actually slashed his tires. Plaintiff further avers that he was terminated over a year after the tire slashing incident.

However, the Defendant correctly points out that evidence presented to the disciplinary review panel indicated that Plaintiff told multiple coworkers Ashley slashed his tire. Moreover, this Court agrees with Defendant's proposition that an "allegation, or even the insinuation, that another employee destroyed personal property in a criminal act without any proof is a false, unfounded, and highly irresponsible statement about a co-worker in violation of SRNS's work rule." Thus, Plaintiff's "passing statements" do not show this reason for termination was a mere pretext. Additionally, although a year had passed since the tire slashing, Plaintiff himself reintroduced the tire slashing allegations during a February 2018 interview about continued bullying. Thus, Plaintiff's objections on this point must be overruled.

Objection Number 3

Plaintiff next argues that the Magistrate Judge ignored evidence when concluding that there was no indication of an obviously inadequate investigation prior to termination. "Evidence of an obviously inadequate investigation in the employee's misconduct could tend to show that claimed employee misconduct was actually pretext for prohibited animus." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 905 (4th Cir. 2017). Plaintiff avers that "[n]o investigation, no matter how large, can be reasonably called adequate if it fails to even attempt to answer the questions for which it was launched." Plaintiff essentially argues that Defendant's investigators should have conducted additional questioning or interviews regarding Wilson's alleged racist comments.

The Report notes that before the decision to terminate Plaintiff was made and approved, Defendant investigator Austin conducted 34 interviews with 16 employees. Austin also reviewed the relevant documentation. This investigation resulted in a 301-page "investigation file." Despite averring that Defendant should have interviewed more individuals, Plaintiff fails to state what relevant information these proposed interviewees would have given. It is mere speculation to claim an "obviously inadequate" investigation occurred with no single fact to support this other than to say not every possible witness was interviewed. *See Wise v. S.C. Dep't of Rev.*, C/A No. 3:18-2161- MGL-PJG, 2020 WL 4218233 at *5 (D.S.C. July 23, 2020) ("[F]urther, [Plaintiff's] disagreement takes issue with a number of SCDOR's investigative methods, but fails to point to any evidence the outcome of the investigation would have been different, other than her denial of making the threatening statement.").

9

The Report correctly states that Title VII does not entitle an employee to "an even, fair, or just investigation." *Bennett v. New Foundations Children and Family Servs., Inc.*, C/A No. 8:08-557-HFF-BHH, 2010 WL 517900, at *8 (D.S.C. Feb. 10, 2010). Additionally, this court does not "sit as a super-personnel department, weighing the prudence of employment decisions made by the defendants." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (holding that pretext is not a vehicle for substituting the court's judgment for that of the employer). The court need not decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette*, 133 F.3d at 299).

Thus, the evidence here shows that Defendant conducted a thorough investigation which yielded numerous reasons for supporting Plaintiff's termination. Just because Plaintiff believes more could have been done, does not mean that the investigation was "obviously inadequate". Thus, Plaintiff's objection on this point must be overruled.

Objection Number 4

Plaintiff next contends that the Report improperly dismisses Defendant's shifting and inconsistent reason for Plaintiff's termination which is evidence of pretext. In support of this objection, Plaintiff cites to deposition testimony from MacVean, the President of Defendant's company.

This exact argument was presented to and rejected by the Magistrate Judge. Within the Report, the magistrate Judge stated that "[b]ased on MacVean's entire testimony, there is no indication Defendant changed its position regarding its reasons for terminating

10

Plaintiff's employment." Plaintiff here again attempts to take portions from MacVean's explanation of Plaintiff's termination out of context to manufacture a genuine issue as to alleged inconsistencies. However, when viewed in its entirety, MacVean's deposition testimony indicates that the reasons for Plaintiff's termination never shifted. At all times, Plaintiff was terminated for making several statements in violation of Defendant's Rule of Conduct 5.1(N). This argument was properly rejected by the Magistrate Judge and Plaintiff's objection is without merit.

It is worthy of note that the above objections each relate to Plaintiff's claims of racial discrimination. However, Plaintiff, who is white, did not address the fact that 11 of the 13 members of Plaintiff's Disciplinary Review Panel are also white. This fact seriously undermines any assertion of discriminatory animus. (ECF No. 30 at 48–49). *See Collins v. Charleston Place*, LLC, C/A No. 2:15-cv-4465-PMD-BM, 2017 WL 9292232 at *8 (D.S.C. Mar. 24, 2017) ("[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff.").

Objection Number 5

Plaintiff's fifth objection states that the Report wrongfully asserts that Plaintiff's hostile work environment claim fails because the racist statements of Defendant's employees were not directed at Plaintiff. Plaintiff points to several comments about "us white people" made at varying points in time to indicate he worked in a hostile work environment.

Despite this assertion, Plaintiff has failed to show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

The Magistrate Judge acknowledged Plaintiff's evidence that co-workers[2] have called white people "stupid," "dumb," and "savages" and noted these comments were in some instances disturbing. However, as the Report makes clear, the majority of these comments were not directed at Plaintiff because of his race or for any other reason, but were discussions that Plaintiff overheard. Additionally, the comments occurred infrequently over the time period at issue. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (19980 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). Thus, Plaintiff's objection on this point must be overruled.

Objection Number 6

Plaintiff next argues that the Report wrongfully asserts that Plaintiff's hostile work environment claim fails because the racist statements of Defendant's employees occurred

---

[2] It should be emphasized that the alleged comments were made by Plaintiff's co-workers, not a supervisor. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (en banc) ("In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., 'a supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals.'" (quoting *Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)).

infrequently over the relevant time period. In support of this argument, Plaintiff cites to his own testimony in which he generally asserts that racist comments "got to be pretty regular."

Again, Plaintiff's comments do not show that his place of employment was permeated with discriminatory ridicule that is sufficiently severe or pervasive to alter the conditions of his employment. Simply stating comments were regular does not establish discriminatory changes in the terms of conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (19980 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."). Thus, Plaintiff's objection on this point must be overruled.

Objection Number 7

The seventh objection alleges that the Report fails to consider the evidence of Ikner's involvement in and handling of Plaintiff's complaints of racist behavior by his co-workers, as well as Ikner's negative disposition toward Plaintiff throughout the relevant time period. Plaintiff alleges that corrective action taken by Defendant in this case, if any, was not effective and did not stop the racist behavior of Defendant's employees, so liability must attach. In cases of alleged co-worker harassment, liability may only be imposed on an employer "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003).

Plaintiff essentially avers that Ikner's responsive investigation into Plaintiff's October 2017 complaints about comments involving the Las Vegas mass shooting was

13

insufficient and ineffective in quelling further racial comments. Plaintiff fails to acknowledge that the Report addresses this concern and points out that Plaintiff also confirmed that in the months following his report to Ikner, management routinely followed up to ask if everything was alright, and Plaintiff did not complain about Wilson again until his first interview with Austin in February 2018. Thus, Plaintiff has not shown that Defendant's actions were ineffective or that Defendant was aware of continued harassment. Defendant was not negligent in relying on Plaintiff's representations that he was fine in the months following his complaint and corrective actions[3] placed by Ikner and SRNS. Thus, this objection must be overruled.

Objection Number 8

Within this objection, Plaintiff complains that the Report wrongfully compares Plaintiff's retaliation to the case of *James v. Cty. Of Florence*, C/A No. 4:18-01857-SAL, 2020 WL 1983220 (D.S.C. 2020). Plaintiff argues that this case is not binding authority and differs factually given that the defendant in that case terminated an employee after a polygraph test revealed that the employee had lied about certain claims.

Here again, the Report specifically cites these arguments made by Plaintiff but rejects them. (ECF No. 30 at 60 n. 33). Despite the factual difference in the use of a polygraph, the instant case has several factual similarities to that of *James*. Both plaintiffs engaged in alleged protected activity. Both employers conducted extensive investigations into the plaintiffs' complaints. Based on the findings of those investigations, both

---

[3] These corrective actions included warning employees not to discuss current events at work and providing a refresher respectful workplace training to all maintenance mechanics.

employers had a good faith belief that the reports were false and uncovered other terminable offenses by the plaintiffs. Thus, there was no error in the Report when analogizing the instant action to another factually similar district court decision.

### Objection Number 9

Plaintiff next takes aim at the Report because it falsely attributes the fact that no other employee reported hearing Wilson making racial comments as evidence that they did not occur. This objection merely restates those issues raised in objections 2.1 and 3 above. Namely, Plaintiff complains that more questioning into Wilson's alleged conduct may have uncovered racial comments. For the same reasons discussed above, this objection must also fail.

Again, this Court would note that just because a comment involves race, does not necessarily mean it is racist. Plaintiff continually refers to Wilson's testimony that he has made statements such as "that's something that only a white person would do" or "that's something that a black person would do" as examples of harassing or discriminatory comments. There is no indication these comments were made to Plaintiff to harass or discriminate. Thus, this objection is overruled.

### Objection Number 10

Plaintiff's tenth objection avers that the Report fails to consider the strong temporal proximity of this case as evidence of pretext. Plaintiff avers that 13 days after he again reported racist and retaliatory behavior in the workplace he was suspended and ultimately fired 6 days later. Plaintiff thus avers this close proximity in time is evidence of pretext which was not properly credited in the Report.

15

However, it is well-established that temporal proximity, without more, is insufficient to support a finding of pretext. *Steinhilber v. Yanfeng US Auto. Interiors I, LLC*, C/A No. 6-18-cv-2966-TMC-KFM, 2020 WL 6219421 at *10 (D.S.C. May 11, 2020) (citing *Jones v. UnitedHealth Group, Inc.*, 802 F. App'x 780, 782–83 (4th Cir. 2020)). Plaintiff has failed to offer any other evidence of a pretext outside of the temporal proximity.

As discussed above, Plaintiff was terminated after a thorough investigation which revealed three separate reasons for termination. Thus, Plaintiff's reliance on temporal proximity alone fails to elucidate any error in the Report which would warrant amendment.

Objection Number 11

Plaintiff's final objection contests that the Report improperly decided material issues of fact related to Plaintiff's claim of defamation. Plaintiff avers that a supervisor's statement that "We are big - tritium and the company - on honesty and integrity" made after announcing an employee had been terminated was defamatory. To support this argument, Plaintiff takes' Wilson's deposition testimony out of context to build one inference on another. (ECF No. 35, p. 34) ("The surrounding testimony *supports an inference* of the latter. Plaintiff's co-worker stated that based on Defendant's message, *he believed* Plaintiff 'crossed the line.'. . . *This implies* that Plaintiff's co-worker *believed* that he engaged in inappropriate, unprofessional, or dishonest conduct.") (emphasis added).

However, Plaintiff fails to recognize that Wilson plainly responded "no, never knew. I never knew the reason until this deposition. Never knew" to the question "So you knew the reason for his [Plaintiff's] termination?". When asked if at the time Aylward

16

made the statement if he believed that it was related to the investigation immediately preceding Plaintiff's being escorted off the site, Wilson testified, "No. Nope, didn't know. I didn't believe that he had done anything that warranted firing at the time." This deposition testimony clearly undermines Plaintiff's contention that Wilson believed Plaintiff was fired due to inappropriate, unprofessional, or dishonest conduct. Thus, Plaintiff's objections are without merit.

## IV.   CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. (ECF No. 30). Accordingly, the court adopts the Report and Recommendation. Thus, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.

June 9, 2021                                   Joseph F. Anderson, Jr.
Columbia, South Carolina                       United States District Judge